IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MICHELLE PETERS, | |
| Plaintiff, | **8:23CV493** |
| vs. | |
| CITY OF OMAHA, JEAN STOTHERT, Mayor, in her official and individual capacities; and DEBORAH SANDER, in her official and individual capacities, | **MEMORANDUM AND ORDER REGARDING DEFENDANTS' RULE 54(b) MOTION FOR ENTRY OF FINAL JUDGMENT AS TO PLAINTIFF'S RETALIATION CLAIMS** |
| Defendants. | |

## I.  BACKGROUND

Michelle Peters, a female Deputy City Attorney in the Civil Division of the Law Department of the City of Omaha, brought this case against the City, then-Mayor Jean Stothert, and Human Resources Director Deborah Sander arising from the hiring of an allegedly less-qualified male candidate to become the City Attorney and from the City's alleged response to Peters's complaints about his hiring. *See generally* Filing 41. In her Second Amended Complaint, Peters asserted four claims. Claim I against the City alleged disparate treatment sex discrimination in violation of Title VII and the Nebraska Fair Employment Practice Act (NFEPA). Filing 41 at 8. Claim II against the City alleged violation of the equal protection clause of the United States Constitution. Filing 41 at 9. Claim III against Mayor Stothert and Sander also alleged violation of the equal protection clause of the United States Constitution. Filing 41 at 10. Claim IV against the City alleged retaliation in violation of Title VII and NFEPA. Filing 41 at 11. On Defendants' Motion to Dismiss, the Court dismissed Peters's equal protection claim against the City in Claim II; dismissed her equal protection claim against Sander in Claim III, although the Court allowed that claim to proceed against Mayor Stothert; and

dismissed Peters's retaliation claims under Title VII and NFEPA against the City in Claim IV. Filing 47 at 33.

This case is now before the Court on Defendants' Rule 54(b) Motion for Entry of Final Judgment as to Plaintiff's Retaliation Claims. Filing 56. Defendants assert that Peters has filed a complaint in the District Court of Douglas County, Nebraska, that alleges a similar retaliation claim under a theory of constructive discharge, which could and should have been included in Plaintiff's Second Amended Complaint. Filing 56 at 1. Defendants contend that Rule 54(b) certification of the Court's dismissal of Peters's retaliation claims in this case is necessary to prevent duplicative litigation and inconsistent rulings by allowing Defendants to raise preclusion defenses in the state court action. Filing 57 at 1. Peters opposes Defendants' Motion on the ground that Defendants have not shown any justification for expediting the appeal of her retaliation claims. Filing 59 at 1.

## II.  LEGAL ANALYSIS

### A.  Rule 54(b) Certification Standards

Federal Rule of Civil Procedure 54(b) provides as follows:

> **(b) Judgment on Multiple Claims or Involving Multiple Parties.** When an action presents more than one claim for relief--whether as a claim, counterclaim, crossclaim, or third-party claim--or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b).

Typically, the party whose claim was dismissed by the district court seeks Rule 54(b) certification in order to pursue immediate appeal of the dismissal. However, nothing in Rule

54(b) limits which party may move for Rule 54(b) certification on any claim. *See id.* Indeed, the Eighth Circuit Court of Appeals found no abuse of discretion in a district court's order granting plaintiffs' Rule 54(b) motion on the dismissal of a defendant's counterclaims, applying the same standards it applied in other Rule 54(b) cases. *See Downing v. Riceland Foods, Inc.*, 810 F.3d 580, 583, 585–87 (8th Cir. 2016) (observing *inter alia* that the plaintiffs sought a Rule 54(b) certification order because it presumably would bind the counterclaimant in an Arkansas state court action against the plaintiffs and additional similar parties and compel dismissal of that case).

Rule 54(b) "addresses the appealability of an order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties." *Johnson v. Lombardi*, 815 F.3d 451, 452 (8th Cir. 2016). It follows that "Rule 54(b) does not apply to a single-claim action." *Id.* (citing *Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 742–43 (1976)). The Rule "creates a well-established exception" to the finality requirement for appealable claims under 28 U.S.C. § 1291. *Downing*, 810 F.3d at 585. "The rule was promulgated 'to avoid the possible injustice that might result if judgment of a distinctly separate claim were delayed until adjudication of the entire case.'" *In re Mun. Stormwater Pond Coordinated Litig.*, 73 F.4th 975, 980 (8th Cir. 2023) (quoting *Page v. Preisser*, 585 F.2d 336, 339 (8th Cir. 1978)).

However, the Eighth Circuit has cautioned that "Rule 54(b) is to be used sparingly. . . ." *Jones v. W. Plains Bank & Tr. Co.*, 813 F.3d 700, 702 (8th Cir. 2015) (quoting *Alpine Glass, Inc. v. Country Mut. Ins. Co.*, 792 F.3d 1017, 1020 (8th Cir. 2015)). Indeed, "[i]nterlocutory appeals are 'generally disfavored' and 'only the special case . . . warrants an immediate appeal from a partial resolution of the lawsuit.'" *Dean v. Cnty. of Gage, Neb.*, 807 F.3d 931, 937–38 (8th Cir. 2015) (quoting *Clark v. Baka*, 593 F.3d 712, 714–15 (8th Cir. 2010)). Thus, the district court

3

must evaluate "such factors as the interrelationship of the claims so as to prevent piecemeal appeals in cases which should be reviewed only as single units." *Id.* at 938 (quoting *Curtiss–Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 10 (1980)). "Where each claim 'requires familiarity with the same nucleus of facts and involves analysis of similar legal issues, the claims should be resolved in a single appeal.'" *Id.* (quoting *Outdoor Cent., Inc. v. GreatLodge.com, Inc.*, 643 F.3d 1115, 1119 (8th Cir. 2011)).

The Eighth Circuit has explained,

> In reviewing Rule 54(b) determinations, we apply an abuse of discretion standard and "largely defer [ ] to the district court's weighing of the equities, but more closely scrutinize[ ] the analysis of judicial administrative interests." [*Outdoor Cent., Inc.*, 643 F.3d] at 1118–19. Appellate courts leave the determination of the "appropriate time when each final decision in a multiple claims action is ready for appeal" to the "sound judicial discretion of the district court." *Curtiss–Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980).

*Downing*, 810 F.3d at 585. The reason for such deference is "because the district court is 'most likely to be familiar with the case and with any justifiable reasons for delay.'" *Jones*, 813 F.3d at 703 (quoting *Clark*, 593 F.3d at 715).

Although Rule 54(b) determinations are a matter in a district court's discretion, "the district court must undertake a two-step analysis when deciding whether to certify an order under Rule 54(b)." *Downing*, 810 F.3d at 585; *accord Jones*, 813 F.3d at 702–03. Specifically,

> [t]he court "must first determine that it is dealing with a final judgment ... in the sense that it is an ultimate disposition of an individual claim." [*Williams v. Cnty. of Dakota, Neb.*, 687 F.3d 1064,] 1067 [(8th Cir. 2012)] (quoting *Outdoor Cent.*, 643 F.3d at 1118). Second, the district court must determine whether a just reason for delay exists. *Id.* In making such determination, "the district court must consider both the equities of the situation and judicial administrative interests, particularly the interest in preventing piecemeal appeals." *Id.* (citation and quotation marks omitted). It is a long-standing rule of the Eighth Circuit that "[c]ertification should be granted only if there exists some danger of hardship or injustice through delay which would be alleviated by immediate appeal." *Hayden v. McDonald*, 719 F.2d 266, 268 (8th Cir. 1983) (per curiam) (citation and quotation marks omitted).

4

*Downing*, 810 F.3d at 585; *accord Jones*, 813 F.3d at 702–03.

### B. Application of the Rule 54(b) Certification Standards

The Court will consider in turn the two requirements for certification of this Court's prior disposition of Peters's retaliation claims as appropriate for entry of final judgment and immediate appeal.

### 1. The "Final Judgment" Requirement for Rule 54(b) Certification

#### a. The Parties' Arguments

Defendants argue that the Court's dismissal of Peters's retaliation claims meets the "final judgment" requirement of Rule 54(b) because the Rule 12(b)(6) dismissal was a judgment on the merits and Peters was not granted leave to amend. Filing 57 at 4. Peters "does not contest that this Court's May 1, 2025 Order on Defendants' Motion to Dismiss disposed of her retaliation claim asserted in her Second Amended Complaint." Filing 59 at 5." However, she argues that disposition "would only become final and appealable if this Court grants Defendants' Rule 54(b) Motion." Filing 59 at 5–6.

#### b. The Dismissal of the Retaliation Claims Was a "Final Judgment"

Again, to certify a claim for immediate appeal under Rule 54(b), the Court "must first determine that it is dealing with a final judgment." *Downing*, 810 F.3d at 585 (citation omitted); *accord Jones*, 813 F.3d at 702–03. The Supreme Court explained that the district court's decision "must be a 'judgment' in the sense that it is a decision upon a cognizable claim for relief, and it must be 'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *Curtiss-Wright Corp.*, 446 U.S. at 8 (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436 (1956)).

Peters's argument in her opposition brief, Filing 59 at 5–6, that this Court's disposition of her retaliation claims "would only become final and appealable if this Court grants Defendants' Rule 54(b) Motion" is backwards. The Court's granting of a Rule 54(b) motion does not determine whether there is a "final judgment"; instead, the Court must find that it is "dealing with a final judgment" as the first requirement for Rule 54(b) certification. *Downing*, 810 F.3d at 585 (citation omitted). To put it another way, it is the Court's determination of whether the disposition amounts to a "final judgment" that determines whether Rule 54(b) can be invoked. *Curtiss-Wright Corp.*, 446 U.S. at 8.

The Court has no hesitation finding that its dismissal of Peters's Title VII and NFEPA retaliation claims was "a 'judgment' in the sense that it is a decision upon a cognizable claim for relief." *Id.* There does not appear to be any dispute that Peters's Title VII and NFEPA claims were legally cognizable claims for relief—albeit inadequately pleaded—or that the Court rendered a decision on those cognizable claims by dismissing them. *Id.*; *see also* Filing 43 at 47 at 33. Likewise, the Court has no hesitation concluding that the dismissal of the retaliation claims was "'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *Id.* Peters brought three claims against one or more Defendants besides her retaliation claims against the City in Count IV. *See* Filing 41 at 8–11. This case is proceeding on her as yet unchallenged claim of disparate treatment sex discrimination in violation of Title VII and NFEPA in Count I, Filing 41 at 8, and on her equal protection claim against Mayor Stothert in Count III, Filing 41 at 10. *See* Filing 47 at 33 ("This case shall proceed further on the claim of sexual discrimination against the City in Claim I and the part of Claim III alleging violation of equal protection by Mayor Stothert."). The Court's Order was the disposition of Peters's retaliation claims in the course of her multiple claims

action, and it was "the ultimate disposition" because no leave to amend was sought or granted. *Curtiss-Wright Corp.*, 446 U.S. at 8.

Thus, the first requirement for Rule 54(b) certification is met here.

2.  *The "No Just Reason for Delay" Requirement for Rule 54(b)*
    *Certification*

The second requirement for a Rule 54(b) certification is that there is "no just reason for delay." Fed. R. Civ. P. 54(b); *Downing*, 810 F.3d at 585. The parties raise numerous issues related to this requirement.

    a.   The Parties' Arguments

Defendants argue that Peters's retaliation claims are factually and legally distinct from her remaining sex discrimination and equal protection claims, so that there is no just reason to delay appeal of the disposition of her retaliation claims in this case. Filing 57 at 5. Defendants argue that Peters's remaining claims are based on her non-selection for the City Attorney position, while her retaliation claims stem from events that allegedly occurred after she was passed over for that position. Filing 57 at 5. Defendants also argue that entry of final judgment on Peters's retaliation claims will promote equity and judicial economy. Filing 57 at 5–6. They argue that without a final judgment on Peters's retaliation claims in this Court, they are prevented from asserting preclusion of Peters's state court constructive discharge claim where that claim is based on facts that Peters could and should have raised in her Second Amended Complaint in this Court. Filing 57 at 6. Defendants argue further that denying or delaying the entry of final judgment would frustrate the purposes of Rule 54(b) for achieving finality and judicial efficiency. Filing 57 at 6. Defendants assert that scrutiny of Peters's state court complaint demonstrates that Peters bases her constructive discharge claim on events that happened before she filed her Second Amended Complaint in this Court. Filing 57 at 6–7. They

7

contend that they should not be burdened with the hardship of litigating nearly identical claims in both courts. Filing 57 at 7.

Peters argues that there is no justification for an expedited appeal of the disposition of her retaliation claims in this Court because avoiding potential multiple trials and inconsistent jury verdicts is not enough to warrant Rule 54(b) certification. Filing 59 at 6. She then argues that her dismissed retaliation claims involve facts and legal analysis similar to her discrimination and equal protection claims that remain pending in this Court, so Rule 54(b) certification is inappropriate even if the claims are to some degree separable. Filing 59 at 6–7. Under these circumstances, she argues that there is no evidence that judicial resources will be conserved by appellate review of her retaliation claims. Filing 59 at 7. She contends that all her claims involve the same people and that her protected activity in complaining about the discriminatory hiring decision that is the basis for her retaliation claims is interrelated with her remaining discrimination claims. Filing 59 at 8.

On the other hand, Peters argues that her state court claim is distinct from her dismissed federal retaliation claim. Filing 59 at 8. She contends that Defendants exaggerate the similarities. Filing 59 at 9. Indeed, she asserts that her state court complaint contains numerous factual allegations regarding events that occurred after she filed her federal court lawsuit and after the expiration of the May 10, 2024, deadline in this Court to amend pleadings and add parties. Filing 59 at 9. She adds that her constructive discharge did not occur until she stopped working for the City in January 2025 after Defendants filed their Motion to Dismiss her Second Amended Complaint in this Court. Filing 59 at 9. She also argues that the focus of a Rule 54(b) motion is appellate judicial efficiency, which would be undermined by the likelihood of piecemeal appeals. Filing 59 at 9. Contrary to Defendants' contentions, Peters argues that it is unlikely that

certifying her dismissed retaliation claims for immediate appeal will have any impact on her state court litigation because the City has "limited prospects for success" in defeating her state court action based on preclusion. Filing 59 at 10.

In reply, Defendants point out that Peters now admits that she filed an administrative charge of constructive discharge with the EEOC nearly a year before she resigned her employment with the City. Filing 62 at 2. They point out that Peters's impetus for doing so was an email she sent her supervisor in June 2023 advising her supervisor that she was "eligible to retire in about a year" so Peters would stop assigning herself new cases. Filing 62 at 2. Defendants also point out that Peters filed her state court constructive discharge claim a week before she filed her administrative charge alleging constructive discharge. Filing 62 at 2. Defendants argue that Peters's initial state court complaint, filed March 7, 2025, relied wholly upon her March 20, 2024, EEOC charge, which was based on her June 7, 2023, email. Filing 62 at 2. Defendants argue that these circumstances are extreme enough to warrant certification so that they can assert their preclusion arguments in state court. Filing 62 at 2–3. Furthermore, Defendants contend that the authorities on which Peters relies are inapposite. Filing 62 at 3.

b. The Circumstances Show "No Just Reason to Delay" Appeal of this Court's Disposition of Peters's Retaliation Claims

In its analysis of this second requirement for Rule 54(b) certification, the Court must "consider both the equities of the situation and judicial administrative interests, particularly the interest in preventing piecemeal appeals." *Downing*, 810 F.3d at 585 (citation omitted). "[T]he district court must properly 'weigh and examine the competing interests involved in a certification decision.'" *Jones*, 813 F.3d at 703 (quoting *Williams*, 687 F.3d at 1068). It bears repeating that "[i]t is a long-standing rule of the Eighth Circuit that '[c]ertification should be

granted only if there exists some danger of hardship or injustice through delay which would be alleviated by immediate appeal.'" *Downing*, 810 F.3d at 585 (quoting *Hayden*, 719 F.2d at 268).

The Eighth Circuit has explained that "several factors should be considered in determining whether danger or hardship through delay exists":

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in setoff against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Downing*, 810 F.3d at 585–86 (quoting *Hayden*, 719 F.2d at 269, in turn quoting *Allis–Chalmers Corp. v. Phila. Elec. Co.*, 521 F.2d 360, 364 (3d Cir. 1975)). The Court concludes that the second and fourth factors in this list have no significant impact on the consideration or weighing of equities related to Rule 54(b) certification in this case. *Jones*, 813 F.3d at 703; *Downing*, 810 F.3d at 585. Thus, the Court will focus on the other three.

As to the first factor, the relationship between the adjudicated claims in this Court and the unadjudicated claims remaining in this Court is not as close as Peters suggests. *Downing*, 810 F.3d at 586. In the context of administrative exhaustion for employment claims, the Eighth Circuit has rejected the argument that a retaliation claim is "like or reasonably related" to a discrimination claim, such that a charge alleging discrimination encompasses a retaliation claim. *See Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 851 (8th Cir. 2012). Indeed, in this case, Peters's discrimination claim is based entirely on her assertion that the City selected a less qualified man for the City Attorney position instead of her. Filing 41 at 8 (¶¶ 60–66). Thus, the facts relevant to the discrimination claim end with the selection of the male candidate. In contrast, her retaliation claim is based on her treatment allegedly motivated by her complaints

10

about the discriminatory selection of a male candidate for the City Attorney position. Filing 41 at 11 (¶¶ 82–86). Thus, the facts relevant to her retaliation claim all relate to events after the selection of a male candidate for the City Attorney position. Although facts related to Peters's discrimination claim may provide some background to her retaliation claim, the two claims do not arise from the same nucleus of facts. *See Dean*, 807 F.3d at 938 (explaining that certification is improper when the adjudicated and unadjudicated claims arise from the same nucleus of facts). Thus, this factor does not weigh against certification. The factual and legal separation between the adjudicated and unadjudicated claims in this case means that the third factor—the possibility that the reviewing court might be obliged to consider the same issue a second time, *Downing*, 810 F.3d at 586—also does not weigh against certification.

Defendants rely heavily on the fifth consideration—miscellaneous factors, *id*.—where they focus on what they argue is the preclusive effect of a final judgment on Peters's retaliation claims in this case on her state court retaliation and constructive discharge claims. Peters's argument that such a consideration is inapposite is simply wrong. In its consideration of "miscellaneous factors"—the Eighth Circuit "agree[d] with the other circuits to address the issue and h[e]ld that a res judicata effect can properly be considered as a 'miscellaneous factor' under the [Rule 54(b)] analysis." *Downing*, 810 F.3d at 587 (citing prior decisions of other Circuit Courts of Appeals recognizing that res judicata ramifications are potentially very important and that it is not realistic to ask a district court to blind itself to one of the decision's most important effects). In *Downing*, the party opposing certification argued much as Peters does here that res judicata considerations, standing alone, are insufficient to support Rule 54(b) certification. *Id.* at 596. The Eighth Circuit explained,

However, in considering whether a Rule 54(b) certification may be granted for the purpose of producing a res judicata effect in another proceeding, the Ninth Circuit pointed out that two other circuits had suggested certification may be granted for such a purpose. [*Cont'l Airlines, Inc. v. Goodyear Tire & Rubber Co*., 819 F.2d 1525 (9th Cir. 1987)] (citing *Bank of Lincolnwood v. Fed. Leasing, Inc*., 622 F.2d 944, 949 n. 7 (7th Cir. 1980) (stating in dicta that "no just reason for delay" includes not only delay of appeal but delay of res judicata); *Republic of China v. American Express Co*., 190 F.2d 334, 339 (2d Cir. 1951) (indicating the district court should have made a Rule 54(b) certification to assure res judicata)). In fact, the Ninth Circuit expressly declined to hold that a judgment's res judicata effect is an improper consideration in determining whether to certify the judgment for appeal under Rule 54(b). *Id.* Instead, it recognized that "[b]ecause a 54(b) ruling in fact has res judicata ramifications, which are potentially very important, it would be unsound and ineffectual to hold that the district courts may not consider this factor in deciding for or against certification." *Id.* The Second Circuit later held that "[t]here is no justification for limiting the issues that a district court can consider in entering a partial final judgment, nor is it realistic to ask a district court to approach the decision while blinding itself to one of the decision's most important effects." *Shamley v. ITT Corp*., 869 F.2d 167, 170 (2d Cir. 1989).

*Downing*, 810 F.3d at 586–87.

Not only can the Court properly consider res judicata or preclusion in its consideration of Rule 54(b) certification, but the relationship between Peters's retaliation claims in this Court and her retaliation claims in state court is closer than Peters is willing to acknowledge. *Downing*, 810 at 586. "Claim preclusion, or res judicata, provides that a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Cornice & Rose Int'l, LLC v. Four Keys, LLC*, 76 F.4th 1116, 1121 (8th Cir. 2023) (quoting *Plough By & Through Plough v. W. Des Moines Cmty. Sch. Dist*., 70 F.3d 512, 515 (8th Cir. 1995)). Defendants are correct that Peters's initial state court complaint, filed March 7, 2025, Filing 58-1, relied wholly upon her March 20, 2024, EEOC charge, which was based on her June 7, 2023, email; the only incidents from 2025 that she identifies in that pleading are her alleged constructive discharge on January 17, 2025, Filing 58-1 at 2 (¶ 4), 9 (¶ 57), and a

right-to-sue letter issued by the EEOC on January 21, 2025, Filing 58-1 at 3 (¶ 13). January 21, 2025, is the date that Peters filed her Second Amended Complaint in this case. Filing 41.

The Court is unconvinced by Peters's argument that her state court complaint contains numerous factual allegations regarding events that occurred after she filed her federal court lawsuit and after the expiration of the May 10, 2024, deadline in this Court to amend pleadings and add parties. Filing 59 at 9. That argument ignores the reality that Peters was granted leave to file her Second Amended Complaint on January 13, 2025, Filing 40, and that she filed her Second Amended Complaint on January 21, 2025. Filing 41. The Court is also unconvinced by Peters's further argument that her constructive discharge did not occur until she stopped working for the City in January 2025 after Defendants filed their Motion to Dismiss her Second Amended Complaint in this Court. Filing 59 at 9. That argument likewise ignores the reality that the Court denied Defendants' November 25, 2024, [Rule] 12(c) Motion for Partial Judgment on the Pleadings, Filing 28, without prejudice when Peters filed her Second Amended Complaint. Filing 42. Defendants filed the relevant Motion to Dismiss as to Peters's Second Amended Complaint on February 4, 2025. Filing 43.

Thus, even if Peters was not trying to avoid this Court's possible disposition of her retaliation claim by filing a parallel claim in state court in March 2025, after Defendants filed their Motion to Dismiss as to her retaliation claim in this Court, Peters certainly could and should have raised in her Second Amended Complaint in this Court anything that she later asserted in her state court retaliation and constructive discharge claim. *See Cornice & Rose Int'l, LLC*, 76 F.4th at 1121. Comparison of Peters's Amended Complaint in state court filed July 8, 2025, Filing 58-3, with her Second Amended Complaint in this Court, Filing 41—as demonstrated in a red-lined document provided by Peters, Filing 60-4—does not lead to a different conclusion.

13

Once again, the only incident from 2025 alleged in the Amended Complaint in state court (as distinguished from filing or issuance of administrative documents, Filing 60-4 at 4 (¶¶ 13–15)) is her alleged forced retirement on January 17, 2025. Filing 60-4 at 15 (¶ 59). Yet, Peters was already contemplating—and indeed asserting—a retaliation claim based on her anticipated retirement, when Peters emailed her supervisor in June 2023 advising her supervisor that Peters was "eligible to retire in about a year" so Peters would stop assigning herself new cases. Filing 58-4. Peters filed an EEOC charge alleging constructive discharge more than nine months before she resigned her employment with the City. Filing 59 at 3 (admission of timing); Filing 60-1 at 1 (¶ 4) (Mullaney Aff., stating Peters filed her first constructive discharge charge on March 20, 2024); Filing 60-2 at 4 (email reflecting filing of the charge). Where Peters retired on January 17, 2025, she cannot assert that the conduct allegedly "forcing" her retirement had not already occurred when she received a right-to-sue letter on January 21, 2025, and filed her Second Amended Complaint that same day.

In short, this is a case in which it would be inappropriate for the Court to "blind itself" to the reality of the potential preclusive effect of certifying the dismissal of Peters's federal retaliation claim as a "miscellaneous factor" that weighs heavily in favor of certification of that dismissal for immediate appeal pursuant to Rule 54(b). *Downing*, 810 F.3d at 586–87. The Court concludes that all the relevant factors weigh in favor of such certification.

## III. CONCLUSION

Upon the foregoing,

1.    Defendants' Rule 54(b) Motion for Entry of Final Judgment as to Plaintiff's Retaliation Claims, Filing 56, is granted;

2.     The Court certifies pursuant to Federal Rule of Civil Procedure 54(b) that there is no just reason to delay appeal of its May 1, 2025, dismissal of Peters's retaliation claim against the City in Claim IV, Filing 47 at 33; and

3.     The Court directs entry of final judgment pursuant to Federal Rule of Civil Procedure 54(b) on Peters's retaliation claim against the City in Claim IV of her Second Amended Complaint.

Dated this 17th day of October, 2025.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge